MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* SEVERE.

4-6315                                                    150 S. W. 2d 42

Opinion delivered April 21, 1941.

278

*Henry Donham* and *Richard M. Ryan,* for appellant.

*H. B. Means,* for appellee.

SMITH, J. Appellee is the widow of Bob Severe, and in that capacity sued the appellant railroad company for damages to compensate the alleged negligent killing of her husband. She recovered judgment for a thousand dollars, from which is this appeal.

The testimony is to the effect that deceased had been drinking for several days. His wife had not seen him for three days; indeed, she had gone to the home of her mother, as she had done on four or five previous occasions when her husband became intoxicated.

About 7 o'clock p. m., or a little later, on November 28, 1939, Severe entered the store of Archie Maroney. He had a 16-pound sack containing bottled beer. Severe opened and drank one of these bottles while in Maroney's store. A train had just passed the flag-station at Perla where mail had been discharged, and Maroney went to the station to get the mail and put it in the post office. He drove to the station in his car and

Severe accompanied him. After putting up the mail, Maroney started to accompany Severe to Severe's home, which would have been reached by walking about a quarter-of-a-mile south or along the railroad track. Severe's home was about 500 feet from the railroad track. There was a path, which the witnesses referred to as a trail, along the west side of the track. Holding Severe by the arm Maroney walked with him down this path for a distance of about 150 feet, when Severe asked Maroney where he was going. When Maroney answered that he was going home with him, Severe said he did not want anyone to go home with him, and Maroney went no farther, but he testified that he watched Severe for a minute or two as he sauntered down the path.

Maroney was, no doubt, the last person to see Severe alive. When Maroney learned early the next morning that Severe had been killed by a train, he went to the place where Severe's body was lying, and he testified that the body was about 600 feet south of the place where he parted company with Severe. The body was lying in the trail about three or four feet from the cross-ties. Maroney testified that when he got on the track at the street—the point from which he and Severe started walking towards Severe's home—he could see something near the track, but could not tell what it was. It was then daylight. The sack, containing four unopened bottles of beer, was found near the body. There is a slight, but unimportant, difference in the testimony as to the exact distance of Severe's body from the track; but none of the witnesses placed the distance at less than three feet. Severe had been struck on his head, evidently by some portion of a train, and his skull crushed. A number of witnesses testified that after making an examination they discovered no blood or brains on the rails or between them, but one witness, a young lady, testified: "There was brains and blood all over the rails, and four or five cross-ties had brains and blood on them in the middle of the track." We must assume that the jury credited this testimony, although it is opposed by that of numerous other witnesses, and that there were brains and blood in the middle of the track. But, even so, this

did not prove that the body was between the rails when struck. The body was not mutilated except the wound on the skull, and otherwise there were no broken bones. None of the beer bottles were broken, and none of them were found between the rails. They were still in the sack. All the witnesses agree that there was no disturbance of the gravel between the rails, and there was no evidence that the body had been dragged for any distance. Severe's vest was torn. When last seen Severe was not between the rails nor on the track. He was walking in the trail. But he had walked only about 600 feet after Maroney left him. Maroney testified that when he left Severe the signal lights were green at the time, which indicated there was no train in the block. Maroney further testified that it was an hour or more after he left Severe before any train passed traveling either north or south. In that hour's time, Severe had traveled only about 600 feet. The track was straight in both directions.

The complaint alleged and the testimony shows that Severe was struck by a southbound train. Five trains, either passenger or freight, passed Perla between 7 p. m. and the time when Severe's body was found. The engineers and firemen of all these trains testified that proper lookout had been kept, but no one had seen Severe.

To hold the railroad company liable in this case would be to make it an insurer against inflicting injury on a trespasser. It would be necessary—to make a case for the jury—to prove only that a body was found near the track upon which a traumatic injury had been inflicted sufficient to produce death. But the law has never been so declared.

Our present Lookout Statute—§ 11144, Pope's Digest—upon which appellee relies for the affirmance of the judgment was first construed in the case of *St. Louis, Iron Mountain & Sou. Ry. Co.* v. *Gibson,* 107 Ark. 431, 155 S. W. 510, and in the second appeal in the same case, reported in 113 Ark. 417, 168 S. W. 1129.

The facts in the Gibson case are more fully stated in the first opinion than in the second. In the first opinion it is recited that ''There was testimony to the effect

that Gibson had been drinking during the day and several persons saw him sitting on the side of the railroad track; one witness stated that he passed him sitting there, and that he had gone about 1,000 yards down the track when he met the approaching train and stepped off the track to let it pass; that before he did so he looked back and could see Gibson still *sitting up* and could see the headlight shining on him." [107 Ark. 431, 155 S. W. 511.]

It was stated in both opinions that the testimony presented a question for the jury whether Gibson's presence on the track could have been discovered in time to have avoided injuring him had a proper lookout been kept.

But in the construction of our Lookout Statute in the first opinion, it was said that "It was not intended, however, that upon proof of the killing of a trespasser by the operation of a train that the presumption should arise that the killing was negligent and the plaintiff entitled to recover damages without showing anything further, and casting the burden of proof upon the company to show that it was not guilty of any negligence, causing the death, as declared in said instruction numbered 1."

In the second opinion in the same case it was again held that a case had been made for submission to the jury as to whether an efficient lookout had been maintained, that question having been submitted under an instruction reading, in part, as follows: " 'And the burden is upon the plaintiff to prove by the testimony, facts sufficient to raise a reasonable inference that the danger might have been discovered and the injury prevented by the trainmen, if a lookout had been kept. And, if the plaintiff has proved such facts sufficient to raise such inference, your verdict should still be for the defendant, if you find from a preponderance of the testimony that a constant lookout was kept by the enginemen, and that they used ordinary care to prevent the injury after actually discovering that deceased was in peril.' "

In approving this instruction it was there said: "The giving of this instruction shows conclusively that the court did not intend to place the burden upon the defend-

ant in the whole case, but it in express terms told the jury that the mere fact that Mr. Gibson was killed by the train did not entitle appellee to recover damages for his death, and that before appellee could recover she must make out a *prima facie* case by the introduction of proof from which the jury might have inferred that the danger to Gibson might have been discovered, and his death avoided, if the lookout required by the statute had been kept and that when this *prima facie* case was made by appellee, then the burden devolved upon the defendant to show by a preponderance of the evidence that such lookout was kept.''

In other words, the mere finding of the body of a trespasser, apparently killed by a train, near or on the track, does not, of itself, make a case for the jury. It must be further shown, by testimony sufficient to raise a reasonable inference, that the danger might have been discovered and the injury averted by the trainmen, if a proper lookout had been kept. When testimony has been offered, sufficient to sustain the reasonable inference that the danger could have been discovered had the efficient lookout required by law been kept, then the burden devolves upon the railroad company to show, by a preponderance of the evidence, that such a lookout had been kept, and it is liable when it fails to do so.

Here, the undisputed testimony shows a lookout had been kept, and there is no testimony to support any reasonable inference to the contrary. Unlike Gibson, Severe was not seen sitting on the track. Under the undisputed testimony, Severe had been, for more than an hour, at the place where his body was found, and the only reasonable inference to be drawn from the testimony is that, in his inebriated condition, he had fallen into a drunken sleep, with his head near enough to the rail to be struck by a southbound train. That he was not between the rails or on one of them is shown conclusively by the fact that, except for the injury to his skull, his body was not mutilated.

Under these circumstances, we think it was error to submit to the jury the question whether an efficient

lookout had been maintained, and whether the injury would have been averted had such lookout been maintained, when the only testimony upon this issue is to the effect that it had been.

This case is controlled by such cases as *St. Louis-San Francisco Ry. Co.* v. *Pace,* 193 Ark. 484, 101 S. W. 2d 447; *Missouri Pacific Rd. Co.* v. *Ross, Admr.,* 194 Ark. 877, 109 S. W. 2d 1246; *Missouri Pacific Rd. Co.* v. *Penny,* 200 Ark. 69, 137 S. W. 2d 934.

In our opinion, no liability upon the part of appellant railroad company has been shown, and as the case has been fully developed, the judgment will be reversed, and the cause dismissed.

HUMPHREYS and MEHAFFY, JJ., dissent.