MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON, TRUSTEE, *v.* FARMAN.

4-7524                                    185 S. W. 2d 91

Opinion delivered February 5, 1945.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*Kenneth C. Coffelt,* for appellee.

SMITH, J. Eddie Preston Farman, the 16-year-old son of Kelly Farman, was employed at a mill adjacent to the right-of-way of the appellant railroad company, in the city of Benton, and he contributed to his father practically all of his wages. On September 23, 1943, about noon, the young man left his place of employment to go home for his lunch, and a few minutes later his mutilated body was found between the two tracks of the railroad. Both of these were main line tracks, one for trains northbound, the other for southbound trains. The body was found about six or seven hundred feet west of the Market street crossing of the railroad, in the city of Benton, this being the nearest crossing. The father brought this suit to recover his loss of contributions and from a judgment in his favor is this appeal.

Young Farman crossed these tracks to go to his home, but he had not attempted to use the Market Street Crossing. He took a shorter route, and in doing so became a trespasser upon the railroad right-of-way, inasmuch as, to reach the railroad tracks, upon leaving the mill, he climbed through, or over, a barbed wire fence inclosing the railroad right-of-way. Just at that time, two trains were passing Benton, but neither stopped there. One of these was a northbound freight train, con-

sisting of 71 cars, the other was a fast, through passenger train, consisting of fifteen coaches. One or the other of these trains struck young Farman and killed him instantly. The body was badly mutilated, and an arm and leg had been severed from the body, which had been dragged a distance of about 70 feet. It is fairly inferable that the boy had been struck by the passenger train, as the body had been dragged in the direction in which that train was moving.

The engineer and the fireman on each of these trains testified that they did not see the boy, although they were keeping a proper lookout. The case was tried upon the theory that had this lookout been kept, the presence and peril of the boy could, and would have been discovered in time to have avoided striking him, but the only testimony lending any support to this theory was that a person standing on the track over which the passenger train passed could have been seen from the depot, which the train passed on its way through Benton, for a distance of a quarter of a mile.

Certain pictures offered in evidence, and testimony relating to them, showed that this was not a straight track, but that there was a curve in the track, not sharp, but substantial. The curve was to the left, and it is conceded that its existence made it impossible for the engineer, whose position was on the right side of the engine, to see the boy, and negligence is not predicated upon the failure of the engineer to keep the lookout. The insistence is, that the fireman, who had a view of the inside of the curve, could and would have seen the boy had he been keeping the lookout required by the statute,* and it is argued that, inasmuch as the fireman did not see the boy, he was not keeping the lookout. We think, however, that too much must be left to speculation and conjecture to sustain that finding.

While we think it fairly inferable that the boy was struck by the passenger train, it does not appear what part of the train struck him, and the testimony does not

* NOTE: Pope's Dig., § 11144.

show his position when he was struck. It must be remembered that two trains were passing each other in opposite directions, and traveling at different rates of speed.

A brakeman on the passenger train testified that he was riding on the rear platform of that train, and as it passed the place where the boy's body was found, he saw an object lying between the tracks, which he could not distinguish on account of the smoke and dust, but which he thought was a human body. As he passed the caboose on the rear end of the freight train, he signaled to a brakeman, who was riding on the left side of the cupola of the caboose, calling the attention of that brakeman to the object which he had seen. The brakeman on the freight train, which was traveling less rapidly, testified that he saw this object and recognized it as a human body, and he notified the conductor of the freight train as soon as he could contact him, and the conductor sent a report of what had been seen when the freight train reached the next station.

We have had frequent occasion to consider the applicability of the lookout statute as applied to the various circumstances recited in the different opinions, and the law of the subject was summarized in the recent opinion in the case of *Mo. Pac. Rd. Co.* v. *Severe,* 202 Ark. 277, 150 S. W. 2d 42, as follows: ". . . the mere finding of the body of a trespasser, apparently killed by a train, near or on the track, does not, of itself, make a case for the jury. It must be further shown, by testimony sufficient to raise a reasonable inference, that the danger might have been discovered and the injury averted by the trainmen, if a proper lookout had been kept. When testimony has been offered, sufficient to sustain the reasonable inference that the danger could have been discovered had the efficient lookout required by law been kept, then the burden devolves upon the railroad company to show, by a preponderance of the evidence, that such a lookout had been kept, and it is liable when it fails to do so."

In our opinion, the provisions of the lookout statute are not applicable to this case, and as no other ground of liability is alleged, the judgment must be reversed, and as the cause has been fully developed, it will be dismissed.