MISSOURI PACIFIC RAILROAD COMPANY, THOMPSON,
TRUSTEE *v.* FIKES, ADMX.

4-8087                                          200 S. W. 2d 97

Opinion delivered March 10, 1947.

*Henry Donham* and *Richard M. Ryan,* for appellant.

*William H. Glover* and *Joe W. McCoy,* for appellee.

HOLT, J. Harriett Fikes, Administratrix of the estate of Percy Fikes, deceased, brought this action to recover damages to compensate for the death of her husband, Percy Fikes, a Negro, who was struck and killed, south of the Main Street crossing in Malvern, Arkansas, by one of appellant's trains at about 4:30 p. m., September 26, 1945. She alleged in her complaint that appellant and its employees, in operating the train, negligently and carelessly failed to keep a lookout, and, after discovering the peril of deceased, failed to use ordinary care to prevent injuring him, and that they failed to warn him by giving the statutory signals. She sought damages for the benefit of herself as widow and for next of kin in the amount of $2,500, and for damages to the estate in the sum of $500. A jury awarded her $1,265 on her own account and for next of kin, and in a separate verdict assessed "her damage for the benefit of the estate in the sum of $235."

This appeal followed.

The testimony was to the following effect. At the time appellee's husband was killed, he was regularly employed at a canning plant near appellant's yards in Malvern. He was about 56 years of age and earning $25 to $30 per week. In a previous accident, he had lost a leg and was wearing a "peg leg," at the time he was fatally injured. At about 4:30 p. m., the deceased, when he had started home from his place of work, for his own convenience, walked along a well beaten path between appellant's main line track and a side track, for some distance, with his back to the oncoming train. This path led across the main line track. While in this situation and approaching the track, he was struck by the outer edge of the front end of the engine and killed instantly. At the time he was struck, he was not at a regular crossing, but was more than 300 feet from the Main Street crossing over which the train passed. The appellant's employees saw the deceased when he was about 15 feet from the track and approaching it, while the train

was about 400 feet away, and there is evidence that they could have seen him for approximately 500 feet or more before he was struck. Appellant's engineer testified: "Q. What part of your engine hit him? A. The pilot. Q. He wasn't walking into the side of the engine? A. He didn't walk into the side of it, no. Q. You hit him with the extreme part next to him? A. The corner of it."

In these circumstances, appellant argues that there was no substantial evidence to take the case to the jury. It is our view, however, after a review of all the testimony, and giving to it its strongest probative force in favor of appellee and the jury's verdict, that a case was made for the jury on appellee's claim for damages for the benefit of herself and the next of kin, and these damages were recovered under the provisions of the Lookout Statute, § 11144 of Pope's Digest.

While we agree with appellant that appellee's intestate at the time he was struck and killed was a trespasser, or a licensee, on the property of appellant, it does not follow in the circumstances that there could be no recovery.

As to the rule governing in such cases, we said in the recent case of *Missouri Pacific Railroad Company, Thompson, Trustee* v. *Merrell*, 200 Ark. 1061, 143 S. W. 2d 51: "The fact is that appellee was either a trespasser or a licensee on the track of appellants. . . . It can make no difference which, as appellants owed him no more duty as a licensee than they did as a trespasser, which was not to injure him willfully or wantonly after discovering his peril, or if his peril could have been discovered 'in time to have prevented the injury by the exercise of reasonable care after the discovery of such peril.' The lookout statute, § 11144 of Pope's Digest, requires all persons running trains to keep a constant lookout for persons and property on the track, and if any person or property is killed or injured by neglect to keep such lookout, the railroad company shall be liable to the person injured 'for all damages resulting from neglect to keep such lookout, notwithstanding the contributory negligence of the person injured, where, if

such lookout had been kept, the employee or employees in charge of such train of such company could have discovered the peril of the person injured in time,' etc., as above quoted," and in *Missouri Pacific Railroad Company, Thompson, Trustee* v. *Farman*, 208 Ark. 133, 185 S. W. 2d 91, we said:

"We have had frequent occasion to consider the applicability of the lookout statute as applied to the various circumstances recited in the different opinions, and the law of the subject was summarized in the recent opinion in the case of *Mo. Pac. Rd. Co.* v. *Severe*, 202 Ark 277, 150 S. W. 2d 42, as follows: '. . . the mere finding of the body of a trespasser, apparently killed by a train, near or on the track, does not, of itself, make a case for the jury. It must be further shown, by testimony sufficient to raise a reasonable inference, that the danger might have been discovered and the injury averted by the trainmen, if a proper lookout had been kept. When testimony has been offered, sufficient to sustain the reasonable inference that the danger could have been discovered had the efficient lookout required by law been kept, then the burden devolves upon the railroad company to show, by a preponderance of the evidence, that such a lookout had been kept, and it is liable when it fails to do so.' "

In the present case, we are unable to say that there was no substantial evidence from which a reasonable inference could have been drawn by the jury that the danger might have been discovered and the death of appellee's intestate averted by the trainmen had a proper lookout been kept.

Appellant also insists that the case should be reversed on account of improper and prejudicial argument of one of appellee's attorneys. The record discloses the following: "If the court please, we object to that statement, that the Missouri Pacific has a heart as cold as steel and would not pay the funeral expenses of the deceased for the reason we don't feel any liability in this case, and are not supposed to pay it and ask the court to reprimand Mr. Glover. *The Court.* Mr. Ryan

proceed, you have 25 minutes to answer. *Mr. Ryan.* Note our exceptions to the ruling of the court.''

We agree that this argument was improper and should not have been made. However, since the award of damages by the jury to the appellee for herself and next of kin, on account of her husband's death, was not excessive, we cannot say that appellant's rights have been prejudiced by the use of the above language. Obviously, we think the modest verdict would indicate the absence of passion or prejudice in the minds of the jury, and that they were not influenced by it.

Appellant next complains: ''Because the court erred in refusing defendant's motion to declare a mistrial in this cause, after the jury had been empaneled and after the testimony had been taken because of the relationship, as employer, of the juror, Mrs. Matthews, to the plaintiff.'' We find this contention to be without merit. It appears that the appellee had on occasions, but ''not lately,'' done some work for Mrs. Matthews as well as for a number of ''other white people.'' We think the fact alone that the appellee had worked for Mrs. Matthews would not disqualify Mrs. Matthews as a juror. The record does not disclose that Mrs. Matthews was questioned on this point and appellant's complaint comes too late.

Appellant also argues that the verdict of the jury for the benefit of the estate of the deceased in the amount of $235 and the judgment for that amount was erroneous, and that this judgment should be reversed and this cause of action dismissed. We think this contention must be sustained.

At the close of all the testimony, the appellant requested an instructed verdict on both causes of action, which the court denied. It is undisputed, in the instant case, that appellee's intestate was killed instantly. There could, therefore, have been no recovery for the benefit of his state in the absence of conscious pain and suffering on the part of the deceased.

In *Brundrett* v. *Hargrove, Administratrix,* 204 Ark. 258, 161 S. W. 2d 762, this court held: (Headnote 5.)

"Since appellee's son was killed instantly, his head being crushed and the evidence showed that he gasped only once, a verdict for pain and suffering is not justified."

Finally, complaint was made about certain instructions relating to appellee's right to recover for herself and next of kin. It would serve no purpose to set out these instructions. It suffices to say that after reviewing them, we think the court fairly and correctly declared the applicable law in the circumstances and that this contention is without merit.

Accordingly, the judgment for $1,265 in favor of appellee in her own right and for the next of kin, is affirmed, but the judgment for $235 for the benefit of the estate is reversed and the cause dismissed.