CLEMONS JOHNSON *v.* STATE OF ARKANSAS

5703                                        478 S.W. 2d 876

Opinion delivered April 17, 1972

*Sloan, Ragsdale & Dishongh,* for appellant.

*Ray Thornton,* Atty. Gen., by *James A. Neal,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Clemons Johnson, appellant herein, was charged with the crime of murder in the first degree. At the conclusion of the State's evidence, the Pulaski Circuit Court, on its own motion, reduced the charge to second degree murder. The jury returned a verdict finding appellant guilty of the crime of voluntary manslaughter. Johnson subsequently filed a petition under Criminal Procedure Rule 1, asserting various grounds in contending that he had not received a fair trial. Witnesses were subpoenaed, and the court conducted a hearing on the allegations in the petition. At the conclusion thereof, the court denied the petition and remanded appellant

to the Department of Correction. From the judgment entered denying the petition, appellant brings this appeal.

Though, as stated, several different grounds for relief were originally raised, only one point is here relied upon, *viz*, the trial court erred in refusing to vacate the finding of the jury after it was established that a juror possessed knowledge which could have been prejudicial to the defendant in his original trial.

This contention is based upon the fact that Nace Bradford, a member of the jury which found appellant guilty of manslaughter, did not inform the court that he knew Johnson prior to serving on the jury, and it is apparently appellant's contention that Bradford knew something about the facts in the case being tried, or that he knew of. Johnston's prior criminal record. It really is not clear which contention is being relied upon for different witnesses were interrogated with regard to both contentions.

Bradford, 82 years of age, testified that he could not see well enough to recognize appellant when the jury was being selected; that when the clerk read Johnson's name at the commencement of the trial, it did not "register" with him, and it was only after his selection, that he realized that he knew Johnson. He said that, after realizing that he knew appellant, he did not know the correct thing to do (whether to tell the court or not), and accordingly did nothing. The witness was very emphatic in stating that he knew nothing about the facts in the case, had never heard them discussed, and reached his decision simply on the law and the testimony. Bradford was interrogated at length as to prejudice but he constantly maintained that he had no prejudice, and decided the case simply on the presentation of the evidence. Bradford's testimony is rather convincing, and, in fact, it does not appear that he had any close connection with Johnson. He said that he was connected with Johnson's family in a small church for a number of years, although he did not know the appellant during that period of time. Johnson had worked on a bricklaying job, Bradford being the job foreman, which was

"quite a period" of time before the trial. Of course, the mere fact that Johnson was known by Bradford, or that they had worked together, would not disqualify the latter; *Missouri Pacific Railroad Co., Thompson, Trustee* v. *Fikes, Admn.,* 211 Ark. 256, 200 S.W. 2d 97. It definitely is not shown that Bradford knew anything about the case.

Joe Montgomery and Earnest H. Mason, who had worked on the job with Bradford and appellant and who had been subpoenaed at the instance of Johnson, both testified that they knew about Johnson being in some trouble, and Montgomery stated that Johnson mentioned it to him, but both witnesses testified that they never heard the case discussed with Bradford, nor did they hear it discussed in his presence. The attorney who represented Johnson at the original trial testified that he consulted and conferred with his client throughout the trial, and it would certainly appear that Johnson, if he thought Bradford was prejudiced against him, would have called his lawyer's attention to the fact that this man was on the jury panel, and should be disqualified or excused.

The only other evidence offered on this point was by appellant's wife, Gladys Johnson, who testified that she called Bradford over the telephone, the record revealing the following:

> "Well, I just asked him did he know Clemons before he was a juror, and he said that-well, I asked him 'didn't you remember Clemons before you went in the jury room?' and he said no he didn't remember him until he got in there and then 'I remembered.' I said, 'Mr. Bradford, wasn't that time enough for you to tell someone you knew him?' He said, 'Well, I guess it was.' He said he did the best he could do on account of he already had a record and everything."

Johnson did not take the stand in his original trial, and it is thus contended that there was no way the jury could have known about Johnson having a prior record, other than to be informed of it by a juror.

This is all of the evidence relating to a past "record" and we agree with the trial court that it was insufficient to afford the relief sought. With the exception of this last mentioned testimony, there is no evidence at all of any prejudice on the part of the juror, nor is there any indication that he did other than try the case on the evidence presented. Certainly, it does not appear that the jury was swayed by prejudice since they reduced the charge against appellant from second degree murder to manslaughter.

The judgment dismissing appellant's petition is affirmed.

It is so ordered.