942 F.2d 218
 UNITED STATES of America
v.
Merchie C. CALABRESE, Jr. a/k/a Merchie Calabrese a/k/a "The
Joker", Joan M. Calabrese a/k/a Joni, John A.
Calabrese, Merchie R. Calabrese, Alphons
Kubecki.
Merchie C. Calabrese, Jr., Appellant in 89-3764.
John A. Calabrese, Appellant in 89-3816.
 Nos. 89-3764, 89-3816.
 United States Court of Appeals,
Third Circuit.
 Argued April 3, 1991.
Decided Aug. 21, 1991.
 
 Thomas R. Ceraso, (argued), Ceraso & Tarosky, Greensburg, Pa., for appellant Merchie C. Calabrese, Jr.
 Cheryl J. Sturm, (argued), West Chester, Pa., for appellant John A. Calabrese.
 Paul J. Brysh, Constance Bowden, (argued), U.S. Atty's. Office, Pittsburgh, Pa., for appellee.
 Before MANSMANN and SCIRICA, Circuit Judges, and POLLAK, District Judge.*
 OPINION OF THE COURT
 SCIRICA, Circuit Judge.
 
 I.
 
 1
 Appellants Merchie C. Calabrese and John Calabrese appeal their convictions for several offenses related to drug distribution.[1] While appellants raise several issues on appeal, we discuss in detail only one: the contention that the selection of jurors did not comply with the requirements of the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861-78 (1988).
 
 II.
 
 2
 Appellants contend that the procedure by which the district court selected the panel of potential jurors violated the Act. The Act governs the selection of grand and petit juries in federal court, and "seeks to ensure that potential grand and petit jurors are selected at random from a representative cross section of the community and that all qualified citizens have the opportunity to be considered for service." United States v. Bearden, 659 F.2d 590, 593 (5th Cir.1981) (citing 28 U.S.C. § 1861), cert. denied, 456 U.S. 936, 102 S.Ct. 1993, 72 L.Ed.2d 456 (1982). The Act prohibits discrimination "on account of race, color, religion, sex, national, origin, or economic status." 28 U.S.C. § 1862.
 
 
 3
 To achieve these goals, the Act provides that each United States District Court shall create a jury selection plan that complies with the Act's requirements. Under the jury selection plan created by the Western District of Pennsylvania, names of potential jurors are taken from voter registration lists. Every two years, the number of jurors that the court believes it will need for the next two years are randomly selected from that list. Those names go on a "master jury wheel," which is maintained for each division of the Western District of Pennsylvania. Every person on the master jury wheel is mailed a qualification questionnaire, which elicits information that would establish whether a juror is qualified under 28 U.S.C. § 1865. That section provides that a juror is deemed qualified unless the juror
 
 
 4
 (1) is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district; (2) is unable to read, write, and understand the English language with a degree of proficiency sufficient to fill out satisfactorily the juror qualification form; (3) is unable to speak the English language; (4) is incapable, by reason of mental or physical infirmity, to render satisfactory jury service; or (5) has a charge pending against him for the commission of, or has been convicted in a State or Federal court of record of, a crime punishable by imprisonment for more than one year and his civil rights have not been restored.
 
 
 5
 28 U.S.C. § 1865(b). The questionnaire also elicits information that would provide the basis for excusals on individual requests, which are granted on certain enumerated grounds such as old age or child care responsibility, or for exemptions, which are provided for active duty members of the armed forces, and several other narrow categories. The end result of this winnowing process is a "qualified jury wheel," comprised of those names from the master jury wheel that are not disqualified, exempt, or excused.
 
 
 6
 When the court requires a jury, a pool of prospective jurors is selected at random from the qualified wheel, and summoned to the court for jury service. A qualified juror may be removed from this group only for the reasons set forth at 28 U.S.C. § 1866(c). That section provides that any person may be
 
 
 7
 (1) excused ... upon a showing of undue hardship or extreme inconvenience ... (2) excluded by the court on the ground that such person may be unable to render impartial jury service or that his service as a juror would be likely to disrupt the proceedings, or (3) excluded upon peremptory challenge as provided by law, or (4) excluded pursuant to the procedure specified by law upon a challenge by any party for good cause shown, or (5) excluded upon determination by the court that his service as a juror would be likely to threaten the secrecy of the proceedings, or otherwise adversely affect the integrity of jury deliberations.
 
 
 8
 Id. This listing is exclusive and exhaustive. The limitation to certain narrow grounds of excusal and exclusion was designed to implement one of the central goals of the Act, the "determination of juror qualifications, excuses, exemptions, and exclusions on the basis of objective criteria only." H.R.Rep. No. 1076, 90th Cong., 2d Sess., reprinted in 1968 U.S.Code Cong. & Admin.News 1792, 1793. Earlier approaches to jury selection had treated federal statutory juror requirements as a minimum, and allowed juror selection to be based on additional subjective criteria, such as "good character, approved integrity, sound judgment and fair education." Id. at 1795. This had "produced discriminatory results, especially in relation to the poor and other minorities." Id. Thus, the exclusive nature of the above list constituted a "bulwark against impermissible forms of discrimination and arbitrariness." Id. at 1793; see also National Jury Project, Jurywork: Systematic Techniques § 5.04[b] (1990).
 
 
 9
 Challenges to compliance with the Act's selection procedures must be raised before voir dire begins, or within seven days after the party raising the challenge discovers, or could have discovered, the grounds for the challenge. 28 U.S.C. § 1867. Challenges must conform with certain procedural requirements which we discuss later in this opinion.
 
 
 10
 A remedy is provided in 28 U.S.C. § 1867(d): "If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the petit jury, the court shall stay the proceedings pending the selection of a petit jury in conformity with this title." The party raising the challenge need not show prejudice. See United States v. Kennedy, 548 F.2d 608, 612 (5th Cir.), cert. denied, 434 U.S. 865, 98 S.Ct. 199, 54 L.Ed.2d 140 (1977); House Report, 1968 U.S.Code Cong. & Admin.News at 1806 (noting that a committee amendment "eliminates the need to prove prejudice as a condition of judicial intervention when substantial noncompliance with the act is established").
 
 III.
 
 11
 Because appellants challenge the process by which the panel of prospective jurors was selected, we will set forth that process in some detail. Before voir dire, the trial judge sent a form letter to each of the approximately 300 jurors who had been summoned to appear for jury duty on August 21, 1989, the day on which appellants' trial was scheduled to begin. The letter asked two questions, requesting a "yes" or "no" response on each of them: (1) "Do you know any of the following defendants in this case?" (the letter then listed all of the defendants and their addresses); and (2) "Will you be able to serve on a jury for a four to six week trial?" In the event that a prospective juror claimed an inability to sit through a lengthy trial, the letter asked that an explanation be provided. No such explanation was requested in the event a prospective juror knew one of the defendants. The jury clerk compiled the results of the letters, and submitted to the district court a list of 167 names of people for whom she believed excusal or exclusion was appropriate, with a brief notation indicating the grounds for each person's removal. The vast majority of these were for hardship engendered by a lengthy trial. The list included twelve jurors, however, because they responded that they knew one of the defendants. The district court signed a blanket excusal for all jurors on the list.
 
 
 12
 According to appellants, the district court was not aware that it was excluding jurors merely because they knew one of the defendants. This view finds support in the following colloquy before the district court, which occurred immediately after counsel for Merchie C. Calabrese objected to the acquaintance-based exclusions:
 
 
 13
 Counsel for Merchie C. Calabrese: One of the problems Your Honor, I don't think mere knowledge of the defendants is sufficient to strike. The reason I say that Your Honor--
 
 
 14
 The Court: We didn't say we would [strike them]. We asked them to answer yes or no. We didn't say you would be excused automatically.
 
 
 15
 Transcript, Vol. 1 at 42. This suggests that the trial judge was not aware that some of the jurors had been removed for acquaintance with one of the defendants. On the other hand, at other points, the transcript suggests that the district court was in fact aware that every juror who responded "yes" to the question regarding knowledge of the defendants was removed. Immediately before the colloquy quoted above, the district court stated, "The only purpose for the letter, if somebody knew one of the defendants, what is the use of calling them in," id. at 41, and referred to "the blanket excuse I signed for the jurors that reported they were familiar." Id. at 11.
 
 
 16
 Immediately after this colloquy, defendants moved to recall the jurors who had been excluded on the basis of a response acknowledging that they knew one of the defendants, or to assemble a new panel of prospective jurors. Then defendants, at the trial judge's suggestion, called as a witness the clerk who sent out the questionnaires and compiled the responses. The clerk described mailing the letters and her treatment of the returned letters. She testified that she had automatically recommended for exclusion every juror who indicated knowledge of one of the defendants. The defendants also introduced documents indicating the number of potential jurors drawn from the qualified wheel and how many had been excused or excluded. After this testimony, the court denied defendants' motion to recall the jurors who had been excluded because they knew one of the defendants or to assemble a new panel of potential jurors.
 
 IV.
 A.
 
 17
 At the outset, we must determine whether appellants have properly raised this objection. As we have noted, a challenge to the procedures under the Act must be made "before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefore, whichever is earlier." 28 U.S.C. § 1867(a). The motion must contain a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title." Id. § 1867(d). Courts have uniformly required strict compliance with these procedures. See Government of Virgin Islands v. Navarro, 513 F.2d 11, 18 (3d Cir.), cert. denied, 422 U.S. 1045, 95 S.Ct. 2662, 45 L.Ed.2d 698 (1975); United States v. Young, 822 F.2d 1234, 1239 (2d Cir.1987).
 
 
 18
 In this case, appellants timely objected, but did not file the sworn statement of facts required by the Act. Rather, they relied primarily on the sworn testimony of the clerk who had granted the allegedly unwarranted exclusions. This testimony was elicited immediately after the defendants objected to the exclusions. Furthermore, it contained undisputed facts, sufficient to provide the district court with a basis for making a decision. We believe that this is sufficient compliance with the statute's procedural requirements. See United States v. Maldonado, 849 F.2d 522, 523 (11th Cir.1988) (suggesting an exception for undisputed facts, sufficient to provide a basis for the district court's decision, but finding it inapplicable to the case then before the court). Therefore, defendants have properly raised the issue.
 
 B.
 
 19
 As we have noted, under the Act a potential juror may be excused or excluded from a panel only on certain enumerated grounds. The only possible grounds for the acquaintance-based exclusions are found at 28 U.S.C. § 1866(c)(2), which provides that a juror may be "excluded by the court on the ground that such person may be unable to render impartial jury service or that his service as a potential juror would be likely to disrupt the proceedings," and at § 1866(c)(4), which provides that a juror may be "excluded pursuant to the procedure specified by law upon a challenge by any party for good cause shown." For the purposes of reviewing the exclusion of a juror on the grounds of probable bias, "good cause shown" means the same thing as "unable to render impartial jury service;" therefore we shall treat sections 1866(c)(2) and 1866(c)(4) together. We review the district court's decision that a particular juror be excluded on these grounds for abuse of discretion. See United States v. Salamone, 800 F.2d 1216, 1227 (3d Cir.1986); United States v. Barnette, 800 F.2d 1558, 1567-68 (11th Cir.1986), cert. denied, 480 U.S. 935, 107 S.Ct. 1578, 94 L.Ed.2d 769 (1987); Government of Virgin Islands v. Gereau, 502 F.2d 914, 934 (3d Cir.1974), cert. denied, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975).
 
 
 20
 Our analysis begins with United States v. Salamone, 800 F.2d 1216 (3d Cir.1986), in which this court held that bias cannot be implied merely from external associations. The defendant in Salamone was convicted of violating federal gun laws. During voir dire, the district court excused for cause those jurors who were members of the National Rifle Association. We held that this constituted a "manifest abuse of discretion."
 
 
 21
 While we acknowledged that further examination might have revealed sufficient bias to merit excusal of the NRA members for cause, "[f]ailure to make the necessary inquiry deprives the trial court of the benefit of the factual predicate that justifies an exclusion for cause." Id. at 1226. We stressed that
 
 
 22
 "[v]oir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored. Without an adequate voir dire the trial judge's responsibility to remove prospective jurors who will not be able impartially to follow the court's instructions and evaluate the evidence cannot be fulfilled."
 
 
 23
 Id. at 1223-24 (quoting Rosales-Lopez v. United States, 451 U.S. 182, 188, 101 S.Ct. 1629, 1634, 68 L.Ed.2d 22 (1981)). " 'This "testing" by voir dire remains a preferred and effective means of determining a juror's impartiality and assuring the accused of a fair trial.' " Id. (quoting United States v. Martin, 746 F.2d 964, 973 (3d Cir.1984)). When the trial judge in Salamone excused jurors in "the total absence on [the] record of any indication that the excluded jurors individually possessed such views which would rightfully justify their dismissal," id. at 1225, it did not fulfill its responsibility to empanel an impartial jury.
 
 
 24
 We rejected the government's argument that the excusals were justified because bias could be presumed from the fact of NRA membership.
 
 
 25
 To allow trial judges and prosecutors to determine juror eligibility based solely on their perceptions of the external associations of a juror threatens the heretofore guarded right of an accused to a fair trial by an impartial jury as well as the integrity of the judicial process as a whole. Taken to its illogical conclusion, the government's position would sanction, inter alia, the summary exclusion for cause of NAACP members from cases seeking the enforcement of civil rights statutes, Moral Majority activists from pornography cases, Catholics from cases involving abortion clinic protests, members of NOW from sex discrimination cases, and subscribers to Consumer Reports from cases involving products liability claims.
 
 
 26
 Id. at 1225. The excusals fundamentally misunderstood the "central inquiry" of challenges for cause: whether a particular, individual juror is able to "faithfully and impartially apply the law." Id. at 1226. Furthermore, we held that " '[j]ury competence is an individual rather than a group or class matter.' " Id. (quoting Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181 (1946)). While we stressed the special deference due a district court's determination regarding the competence of a particular juror, "the 'factual determination' by the district court in [Salamone], being totally devoid of any foundation, leaves us with the single conclusion that the voir dire was inadequate to preserve and protect the rights of the accused." 800 F.2d at 1226.
 
 
 27
 We recognize that in Salamone, the reason for the excusals was plainly visible; and the ability of the excluded jurors to serve impartially could be carefully scrutinized. In this case, by contrast, because there was no explanation or voir dire, we do not know whether the excluded jurors could properly have been excluded for cause. The responses to the questionnaire could have reflected blood relationship, friendship, antagonistic relationship, or mere acquaintance (a potential juror could have responded "yes" on the questionnaire even if he had only briefly met one of the defendants).
 
 
 28
 Nevertheless, we believe that the principles we expressed in Salamone barred the exclusions in this case. Because the district court had no other information about each excluded juror, it could only have relied on the fact of acquaintance alone. This was not sufficient. A juror who merely had a passing acquaintance with one of the defendants would not, on the basis of acquaintance alone, be rendered incompetent to serve in this case--just as a member of the NRA would not, on the basis of membership alone, be rendered incompetent to serve in a gun law case.
 
 
 29
 The United States Supreme Court has taken a similarly narrow view of implied bias. In Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), the defendant was convicted of criminal contempt for failure to appear before the House Committee on Un-American Activities. A majority of the jury that convicted him was employed by the federal government. Government employees at that time were subject to an Executive Order providing for discharge from their federal employment "upon reasonable grounds for belief that they are disloyal to the Government of the United States." 339 U.S. at 165, 70 S.Ct. at 520. This did not, standing alone, justify a finding that the defendant's jury was not impartial: "a holding of implied bias to disqualify jurors because of their relationship with the Government is [not] permissible." 339 U.S. at 171, 70 S.Ct. at 523. A similar approach was taken in Smith v. Phillips, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). In that case, a member of the jury that convicted the defendant had applied for a job with the district attorney's office during the defendant's trial. The defendant contended that this violated his Fourteenth Amendment right to a fair trial. After a post-trial hearing on the issue, the trial judge found insufficient evidence to demonstrate the juror's actual bias, and let the conviction stand. On a petition for federal habeas corpus relief, the district court also found no actual bias, but granted relief based on implied bias, because " 'the average man in [the juror/job applicant's] position would believe that the verdict of the jury would directly affect the evaluation of his job application.' " Id. at 214, 102 S.Ct. at 944 (quoting Phillips v. Smith, 485 F.Supp. 1365, 1371-72 (S.D.N.Y.1980)). Relying on Dennis and similar cases, the Court rejected the district court's reliance on implied bias. Rather, "[t]he remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." 455 U.S. at 215, 102 S.Ct. at 945. Because the trial court had held such a hearing, and concluded that there was no actual bias, the defendant's conviction did not violate the Fourteenth Amendment.[2]
 
 
 30
 There are many cases holding that merely knowing one of the defendants does not, standing alone, constitute a sufficient showing of bias requiring excusal for cause. See United States v. Kelton, 518 F.2d 531, 533 (8th Cir.) (One of the jurors was acquainted with the defendant's family. "Standing alone, the attenuated relationship claimed here will not support the required finding of actual prejudice."), cert. denied, 423 U.S. 1021, 96 S.Ct. 460, 46 L.Ed.2d 394 (1975); see also Johnson v. State, 252 Ark. 325, 327, 478 S.W.2d 876, 878 (1972) ("[T]he mere fact that [the defendant] was known by [the juror], or that they had worked together, would not disqualify the latter."); Mills v. State, 462 So.2d 1075, 1079 (Fla.1985) (per curiam) ("The prospective juror's distant relationship to the victim's family and his acquaintance with [the defendant] and his family did not negate his declarations of impartiality [and therefore excusal for cause was not required]."), cert. denied, 473 U.S. 911, 105 S.Ct. 3538, 87 L.Ed.2d 661 (1985); State v. Ford, 81 N.M. 556, 558, 469 P.2d 535, 537 (N.M.Ct.App.1970) (mere fact that defendant had known one of the defendants for fifteen years did not require excusal for cause); C.R. Owens Trucking Corp. v. Stewart, 29 Utah 2d 353, 354, 509 P.2d 821, 822 (1973) (mere fact of acquaintance did not require excusal for cause).
 
 
 31
 Similarly, United States Courts of Appeals have consistently held that knowing the victim of a defendant's crime does not, standing alone, justify a finding of bias requiring excusal for cause. See Howard v. Davis, 815 F.2d 1429, 1431 (11th Cir.) (in a murder trial, it was not an abuse of discretion for the district court to fail to excuse for cause a juror who had been a "close friend" of the victim), cert. denied, 484 U.S. 864, 108 S.Ct. 184, 98 L.Ed.2d 136 (1987); United States v. Freeman, 514 F.2d 171, 173-74 (8th Cir.1975) (no abuse of discretion in failure to excuse for cause a juror who knew the victim's family "only slightly"). Nor is excusal required where the juror knows another participant in the proceedings. See United States v. Frank, 901 F.2d 846, 849 (10th Cir.1990) (no abuse of discretion in failure to excuse for cause juror who knew one of the prosecutors in the case); United States v. Allred, 867 F.2d 856, 870 (5th Cir.1989) (no abuse of discretion in failure to excuse for cause a juror who was casually acquainted with an employee of the investigative agency that had prepared the case); see also Tinsley v. Borg, 895 F.2d 520, 526-29 (9th Cir.1990) (juror in a rape trial was a psychiatric social worker who had counselled rape victims; bias could not be implied from this fact alone), cert. denied, --- U.S. ----, 111 S.Ct. 974, 112 L.Ed.2d 1059 (1991); United States v. O'Neill, 767 F.2d 780, 784-85 (11th Cir.1985) (bias could not be implied from fact that juror in a narcotics trial had friends who were DEA agents); Celestine v. Blackburn, 750 F.2d 353, 358-61 (5th Cir.1984) (no abuse of discretion in failure to excuse juror who knew the victim's granddaughter), cert. denied, 472 U.S. 1022, 105 S.Ct. 3490, 87 L.Ed.2d 624 (1985). Similarly, in United States v. Ferri, 778 F.2d 985, 991-94 (3d Cir.1985), cert. denied, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986), this court held that acquaintance between the husband of a juror and one of the government's witnesses did not implicate the doctrine of implied bias. While these cases do not lead directly to our result today--because they all affirmed a district court's failure to find bias--they do demonstrate clearly that mere knowledge of the defendant does not, without anything more, indicate bias.
 
 
 32
 The government relies on several cases upholding excusals for cause on the basis of the defendant's relationship with the juror. All of those cases save one, however, involve a far more compelling connection than mere acquaintance. See United States v. Campbell, 845 F.2d 782, 786 (8th Cir.) (trial of a judge for vote buying; excusal, after questioning, of a juror whose in-laws had worked for defendant during the challenged election), cert. denied, 488 U.S. 965, 109 S.Ct. 490, 102 L.Ed.2d 527 (1988); United States v. Lewis, 759 F.2d 1316, 1350 (8th Cir.) (excusal of the mother of a clerk's office employee), cert. denied, 474 U.S. 994, 106 S.Ct. 406, 407, 88 L.Ed.2d 357 (1985); Stokes v. Delcambre, 710 F.2d 1120, 1128 (5th Cir.1983) (excusal of a juror who had known defendant sheriff for twenty years and attended some political functions involving him). The one exception is United States v. Bailey, 468 F.2d 652, 658 (5th Cir.1972). In Bailey, the Court of Appeals for the Fifth Circuit found "without merit" defendant's argument that the trial judge had committed prejudicial error in its excusal of jurors "admittedly acquainted, regardless how remotely, with one of the parties to the proceedings." In light of Salamone, however, we do not believe that the reasoning and result in Bailey is consistent with the law of this circuit.
 
 
 33
 The government also contends that United States v. North, 910 F.2d 843, 910 (D.C.Cir.), modified in part, 920 F.2d 940 (D.C.Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2235, 114 L.Ed.2d 477 (1991), supports the propriety of the exclusions in this case. In that case, the district court excused for cause all of the jurors who answered affirmatively a pretrial questionnaire asking whether they had been exposed to the defendant's widely publicized, but immunized, pretrial testimony. The United States Court of Appeals for the District of Columbia found that the excusals were founded on "the reasonable presumption that jurors who noted their exposure on the questionnaire had such significant recollections that they would be unlikely to render an impartial verdict," id. at 910, and therefore were properly "for cause." In this case, the government contends that the inference of bias from mere acquaintance is similar to the inference of bias from a recollection of exposure to immunized testimony. We disagree. We find the speculative leap much broader. As we have demonstrated, courts have almost unanimously declined to automatically infer bias from mere acquaintance. Moreover, there was nothing inherently troubling about the inference of bias in North. In contrast, the excusals in this case can only be justified by an inference of bias from external associations. Furthermore, the excusals in North were consistent with the assiduous protection of the defendant's Fifth Amendment rights. No similar interest was served by the exclusions in this case.
 
 
 34
 The government contends that Salamone is distinguishable because those excusals occurred during voir dire, whereas this case involves the removal of jurors "at a much earlier point." We disagree. The statute's drafters observed that § 1866(c)(4) preserved "traditional" challenges for cause, see House Report, 1968 U.S.Code Cong. & Admin.News at 1804. We believe that the term exclusions "for good cause shown" under § 1866(c)(4) is defined in precisely the same way as excusals for cause during voir dire. We can find no indication of any intent to provide a new, broader meaning for the term "for good cause shown" in the context of pre-voir dire exclusions under § 1866(c)(4). Nor does the government provide a convincing rationale for defining the term more broadly. Because the exclusions at issue in this case would not have been acceptable as a "for cause" challenge during voir dire, they were not acceptable during assembly of the panel of potential jurors.
 
 
 35
 For these reasons, we believe that the exclusions for cause on the basis of mere knowledge of a defendant, without anything more, is not consistent with the sound exercise of discretion.
 
 
 36
 Our ruling today has no effect on the availability of implied bias in certain cases. As Justice O'Connor observed in a concurring opinion in Smith v. Phillips, 455 U.S. 209, 222, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982), "there are some extreme situations that would justify a finding of implied bias. Some examples might include a revelation that the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." Cf. United States v. Skelton, 893 F.2d 40, 45-46 (3d Cir.), cert. denied, --- U.S. ----, 111 S.Ct. 53, 112 L.Ed.2d 29 (1990); Salamone, 800 F.2d at 1225 n. 11; United States v. Ferri, 778 F.2d 985, 991-94 (3d Cir.1985), cert. denied, 476 U.S. 1172, 106 S.Ct. 2896, 90 L.Ed.2d 983 (1986); United States ex rel. De Vita v. McCorkle, 248 F.2d 1 (3d Cir.) (implied bias justified excusal for cause of juror who was a victim of the same type of crime being tried), cert. denied, 355 U.S. 873, 78 S.Ct. 121, 2 L.Ed.2d 77 (1957).[3] We cannot say whether such implied bias might have been applicable to some or even all of the removed jurors in this case. We simply do not know, because the jurors were never questioned further, either by mail or by voir dire. See Skelton, 893 F.2d at 46 ("even assuming that bias might in some circumstances be implied, though actual bias is not demonstrated, it could only be implied from facts"). From the complete absence of any inquiry by the district court, the exclusions can only have been based on acquaintance alone.
 
 
 37
 Nor do we disturb the substantial amount of discretion granted a trial judge in decisions to excuse a potential juror on the grounds of actual bias, at any stage of the proceedings. As this court observed in Government of Virgin Islands v. Gereau, 502 F.2d 914, 934 (3d Cir.1974), cert. denied, 420 U.S. 909, 95 S.Ct. 829, 42 L.Ed.2d 839 (1975),
 
 
 38
 [t]he trial judge, in determining whether a juror is likely to be biased, has the benefit of observing the juror during voir dire as well as evaluating the juror's answers. For this reason, the Supreme Court has recognized that "the trial court has a serious duty to determine the question of actual bias, and a broad discretion in its rulings on challenges therefor."
 
 
 39
 (Quoting Dennis v. United States, 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950)). See also Mu'Min v. Virginia, --- U.S. ----, 111 S.Ct. 1899, 114 L.Ed.2d 493 (1991) (reaffirming trial judge's substantial discretion over the conduct of voir dire). As we have noted, this case does not involve a determination by the trial judge on the actual bias of a particular juror.
 
 V.
 
 40
 Having established that the exclusions were not justified under the Act, we turn to the question of whether the Act provides appellants with a remedy. By its terms, the Act only provides a remedy for substantial failures to comply with its provisions. 28 U.S.C. § 1867(d); see, e.g., United States v. Savides, 787 F.2d 751, 752 (1st Cir.1986); United States v. Gregory, 730 F.2d 692, 698-700 (11th Cir.1984), cert. denied, 469 U.S. 1208, 105 S.Ct. 1170, 84 L.Ed.2d 321 (1985). Congress left the content of this term largely up to the courts, see House Report, 1968 U.S.Code Cong. & Admin.News at 1794 ("Your committee would leave the definition of 'substantial' to the process of judicial decision."); cf. United States v. Bearden, 659 F.2d 590, 600-01 (5th Cir.1981). In determining whether a violation is substantial, "the alleged violations must be weighed against the underlying principles of the Act." Gregory, 730 F.2d at 699. These principles are (1) random selection of jurors and (2) determination of disqualifications, excuses, exemptions, and exclusions on the basis of objective criteria only. Bearden, 659 F.2d at 600-01; Gregory, 730 F.2d at 699.
 
 
 41
 Bearden, like this case, involved erroneous removals from a pool of prospective jurors. In Bearden, the wrongful excusals were the result of mistakes that could fairly be termed "purely technical." For example, in determining whether potential jurors were eligible for an excusal available to those over the age of seventy, the clerk used the juror's age as of the projected trial date, not, as the local jury selection plan required, their age as of the date of their response to the juror questionnaire. Similarly, the clerk granted automatically excusals that were to be granted only on request. The court held that although these were errors, they did not amount to a substantial failure to comply with the Act. See also Gregory, 730 F.2d at 699 (denying relief for "purely technical" violations of the court's jury selection plan by clerk personnel); United States v. Nelson, 718 F.2d 315, 318-19 (9th Cir.1983) (permitting a juror who showed up on the wrong day to serve was not a substantial violation); United States v. Maskeny, 609 F.2d 183, 193-94 (5th Cir.) (clerk making excusal decisions that should have been made by the judge did not require reversal), cert. denied, 447 U.S. 921, 100 S.Ct. 3010, 65 L.Ed.2d 1112 (1980); United States v. Evans, 526 F.2d 701 (5th Cir.), cert. denied, 429 U.S. 818, 97 S.Ct. 62, 50 L.Ed.2d 78 (1976).
 
 
 42
 In discussing the violations, the Bearden court described its inquiry as follows:
 
 
 43
 For wrongful exclusions, determining whether there has been a substantial violation has both quantitative and qualitative aspects. Quantitatively, a substantial violation generally will not be found if the number of errors is small. Qualitatively, the inquiry is whether there has been a frustration of the Act's underlying principle of exclusions on the basis of objective criteria only.
 
 
 44
 659 F.2d at 607. Explaining the latter inquiry, the court relied on the legislative history we have quoted which criticized the employment of additional, subjective criteria:
 
 
 45
 The subjective criteria contemplated and rejected by the Act, then, are those which, intentionally or not, result or are likely to result in discrimination, or which fail to produce juries representing a fair cross section of the community. The mere misrepresentation or misapplication of the objective criteria by a clerk's office does not violate the objectivity principle, in the absence of a discriminatory potential or effect.
 
 
 46
 659 F.2d at 608 (citations omitted).
 
 
 47
 We find that framework for analysis useful. Quantitatively, this case appears similar to Bearden, in which the clerk had wrongfully removed 1.2% of approximately 30,000 jurors from the qualified wheels. In this case, the 12 wrongfully excluded jurors amount to 4% of the pool of approximately 300 potential jurors.
 
 
 48
 Qualitatively, however, we believe that this case differs significantly from Bearden and the other cases involving "technical" violations of the Act. This case does not involve misapplication of objective criteria by a clerk, but rather involves the de facto creation of a new category of exclusions. Even though it is not clear that the district judge was aware that he was creating a new category when he granted the exclusions, we view the exclusions here in that light rather than as mere technical or clerical oversights. In contrast to Bearden, the exclusions here were a result of an inquiry posed by the trial judge.
 
 
 49
 More significantly, the challenged exclusions in this case were not, as in Bearden, a result of the misapplication of technical criteria. The trial court created its own group, based on an impermissible inference of bias, and excluded all members of the group from the defendant's jury.
 
 
 50
 To determine whether this amounted to a substantial violation, we look again to Salamone. As that case involved excusals granted during voir dire, it did not involve an inquiry into whether the exclusions were "substantial" under the Act. We did, however, discuss in some detail whether the excusals had prejudiced the defendant. Much of that discussion bears directly on whether the violations in this case were substantial.
 
 
 51
 [W]here such a "manifest abuse of discretion" results in the wholesale exclusion of a particular group, we do not deem it necessary for the defendant to affirmatively demonstrate the existence of actual prejudice in the jury panel. Under such circumstances, prejudice may be presumed. As the Supreme Court observed in Peters v. Kiff, 407 U.S. 493, 504, 92 S.Ct. 2163, 2169, 33 L.Ed.2d 83 (1972):
 
 
 52
 It is the nature of the practices here challenged that proof of actual harm, or lack of harm, is virtually impossible to adduce. For there is no way to determine what jury would have been selected under a constitutionally valid selection system, or how that jury would have decided the case. Consequently, it is necessary to decide on principle which side shall suffer the consequences of unavoidable uncertainty.
 
 
 53
 In the instant appeal, essential demands of fairness dictate that the errors of the prosecutor and trial judge not be visited upon appellant, Salamone. The government improperly "created its own group," Barber v. Ponte, 772 F.2d 982, 1000 (1st Cir.1985) (in banc) [cert. denied, 475 U.S. 1050, 106 S.Ct. 1272, 89 L.Ed.2d 580 (1986) ], and the trial court, without justification, excluded all members of the group from Salamone's jury. To require appellant to adduce proof of what could have happened puts the defendant in the predicament referred to in Peters of providing proof that is "virtually impossible to adduce."800 F.2d at 1227-28 (footnote omitted).[4] The exclusions in this case are inconsistent with the principles that led us to our result in Salamone. The appellants were "entitled to a jury from which none of those, or any other group, has been summarily excluded without regard to their ability to serve as jurors in a particular case." Id. at 1229. Nor can we allow mere acquaintance with one of the defendants to take the place of individual determinations of competency. None of these results is consistent with a jury "selected at random from a fair cross section of the community," 28 U.S.C. § 1861, as envisioned by the Act.
 
 
 54
 It is also apparent that the excusals could frustrate the Act's goal of eliminating subjective practices that could facilitate racial, religious, economic, and ethnic discrimination. One of the particular evils the Act was designed to eliminate was the "key man" system, which governed the selection of jurors in many jurisdictions. See House Report, 1968 U.S.Code Cong. & Admin.News at 1794 n. 1. Under a key man system, the names of jurors are supplied by "key men" thought to have extensive contacts throughout the community. The possibilities for intentional discrimination in such a system are obvious. Congress' concern was not limited to intentional discrimination, however; it was also concerned with the unintentional underrepresentation of certain racial groups, as well as economic and social classes, that inevitably result from this system. Key men tended to know, and therefore designate, people of the same race, class, and social status. Thus one of the Act's central teachings is that a jury cannot be defined by whom any one person knows, because such a system threatens discrimination.
 
 
 55
 Even though the exclusions in this case do not threaten inequitable results in precisely the same way that the "key man" system does, they are analogous in an important way. Defendants, no less than "key men," might tend to know people of the same race, class, and social status. Just as this dynamic should not be allowed to control the composition of a jury through the process of inclusion, it should not be allowed to control the jury through the process of exclusion.
 
 
 56
 However, we do not rest our decision on this ground. We do not know whether the excluded jurors could have been excluded for cause; if they could have, then the fact that the jurors excluded in this case happened to be of the same race, class, or social status as the defendant would not, in itself, amount to a substantial violation. We are limited to speculation, however, because the district court did not conduct any inquiry into the nature of the jurors' acquaintance with the defendants. Where the excusal or exclusion of a significant number of jurors is not based on one of the Act's enumerated grounds, and where the district court has not provided any basis for the excusals or exclusions, we believe that this lack of inquiry itself constitutes a substantial violation of the Act. The Act is designed to confine excusals and exclusions to a limited list of specifically enumerated grounds. Were we to hold the exclusions in this case to be insubstantial, we would permit one of the Act's central precepts to be avoided by mere silence. We decline to do so.
 
 
 57
 The government raises a similar argument, contending that because the excluded jurors in this case might have been excluded for cause we cannot say with any certainty that the violation was substantial. For example, they might have had a firm negative opinion of the defendants. If these were the facts before the district court, the excusals would not be a violation of the Act, let alone substantial violations. For the reasons set forth previously, however, we do not find this argument persuasive. If the speculative possibility that a significant number of exclusions might be proper could render a violation insubstantial, the Act would not effectively limit exclusion to certain narrow, specifically enumerated grounds.
 
 
 58
 For these reasons, we hold that the district court's actions amounted to a substantial violation of the Act.[5] When a substantial failure to comply with the Act has been established, "the court shall stay the proceedings pending the selection of a petit jury in conformity with this title." 18 U.S.C. § 1867(d). Here the district court did not either stay the proceedings pending a hearing on the exclusions or call a new panel free of the infirmity. As we have noted, no prejudice to defendant need be shown.[6] Therefore we will vacate appellants' convictions, and remand to the district court for a new trial.
 
 
 
 *
 The Honorable Louis H. Pollak, United States District Judge for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 Appellant Merchie C. Calabrese was convicted of conspiring to distribute cocaine, marijuana, and quaaludes, in violation of 21 U.S.C. § 846; of operating a Continuing Criminal Enterprise, in violation of 21 U.S.C. § 848; of money laundering, in violation of 18 U.S.C. § 1956; and of several offenses related to nonpayment of income taxes. Appellant John Calabrese was convicted of conspiring to distribute and possession with intent to distribute cocaine, marijuana, and quaaludes in violation of 21 U.S.C. § 846; and of tax fraud, in violation of 18 U.S.C. § 371
 
 
 [2]
 The Court did not foreclose the applicability of implied bias in an appropriate case. See Justice O'Connor's concurring opinion, 455 U.S. at 221, 102 S.Ct. at 948, which is discussed below
 
 
 [3]
 See also Person v. Miller, 854 F.2d 656, 664 (4th Cir.1988) ("[T]he doctrine of implied bias is limited in application to those extreme situations where the relationship between a prospective juror and some aspect of the litigation is such that it is highly unlikely that the average person could remain impartial in his deliberations under the circumstances."), cert. denied, 489 U.S. 1011, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989); United States v. Allsup, 566 F.2d 68, 71-72 (9th Cir.1977) (implied bias justified an excusal for cause where "[t]he potential for substantial emotional involvement, adversely affecting impartiality" was evident)
 
 
 [4]
 Judge Stapleton, concurring, disagreed that prejudice should be presumed. He took an even stronger view, reasoning that no prejudice needed to be shown because (1) a showing of prejudice was "virtually impossible to make," and (2) "society's interest in maintaining confidence in the integrity of its criminal justice system mandates that the process in this case be repeated." 800 F.2d at 1231. The class of errors for which no prejudice need be shown is a narrow one, limited to issues that are of unique importance to society and the judicial system. See Davis v. Georgia, 429 U.S. 122, 123, 97 S.Ct. 399, 400, 50 L.Ed.2d 339 (1976) (per curiam) (exclusion of jurors who are not irrevocably committed to vote against the death penalty); Peters v. Kiff, 407 U.S. 493, 502-03, 92 S.Ct. 2163, 2168-69, 33 L.Ed.2d 83 (1972) (opinion of Marshall, J.)
 
 
 [5]
 We do not decide whether this same result would apply where a de minimis number of jurors is involved. In this case the number of jurors, while small, was not de minimis
 
 
 [6]
 Because there is no requirement that prejudice be shown, this is not a case in which a remand to the district court for a factual inquiry into the actual relationships between defendants and the excused jurors is appropriate. Compare McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984) (where a juror provides a mistaken answer during voir dire, a new trial is merited only after a hearing at which the party demonstrates that a correct response would have justified a challenge for cause)