**UNITED STATES of America, Appellee,**

v.

**Donald C. BOYD, Appellant.**

**No. 79–1139.**

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1979.

Decided Sept. 28, 1979.

Thomas M. Kelly, Minneapolis, Minn., for appellant.

Thorwald H. Anderson, Jr., Asst. U. S. Atty., Minneapolis, Minn., for appellee. Andrew W. Danielson, U. S. Atty., William M. Orth, Legal Intern., Minneapolis, Minn., on brief.

Before LAY, ROSS and HENLEY, Circuit Judges.

ROSS, Circuit Judge.

Donald C. Boyd appeals from his conviction on two counts of conspiracy to defraud and 18 counts of mail fraud in violation of 18 U.S.C. §§ 371 and 1341. On appeal Boyd claims that the government failed to prove that the mailings described in the 18 mail fraud counts were sent for the purpose of executing a fraudulent scheme. He also argues that the district court [1] erred in permitting a witness to testify while referring to a summary of his previous statement to the FBI, in submitting certain documents for jury consideration, and in imposing a five-year sentence [2] on count 20.

We reverse in part, affirm in part, and remand for resentencing.

Boyd directed two organizations which received funding from the Upper Great Lakes Regional Commission (UGLRC). The UGLRC is a federally funded agency created to promote economic development in areas of Minnesota, Wisconsin and Michigan. The agency approves grant requests from semiprivate organizations and local government units for the purpose of starting private businesses or lending technical assistance to already existing businesses. Approved grantees receive a grant contract specifying the amount to be funded and a payment schedule. The payment schedule is based upon either progress reports from the organization or invoices requesting further payments.

The UGLRC approved several grants for projects known as the Northern Minnesota Small Business Development Center (NMSBDC), and the Duluth Area Economic Development Office (DAED). Donald Boyd was director of these projects, which received about $1,030,000 in federal funds through the UGLRC.

Counts 1–14 involved grant requests sent from the Minnesota Department of Economic Development and from Boyd on behalf of his organizations to the federal commission, and checks sent from the U. S. Treasury to the state agency or to Boyd in response to those requests. Although the state agency was to have served as a financial intermediary, directly receiving funds from the federal commission and passing them on to grantees for approved projects, the evidence established that Boyd's organizations at times directly received the funding from the U. S. Treasury.

Boyd hired James Manos as a consultant for projects receiving federal funds and, on a continuing basis, demanded that Manos kick back a substantial portion of his consulting fees to Boyd. These kickback transactions were the subject of Boyd's indictment on 18 counts of mail fraud, and on count 19 for conspiracy to defraud the United States.

Boyd does not challenge his conviction on count 19 but contends that the government failed to establish that the mailings described in the 18 mail fraud counts were sent for the purpose of executing the fraudulent scheme.

The mail fraud statute, 18 U.S.C. § 1341, proscribes any use of the mails "for the purpose of executing" a scheme to de-

1. The Honorable Edward J. Devitt, Chief Judge, United States District Court for the District of Minnesota.

2. Boyd was fined $10,000 and sentenced to five years imprisonment on count 20 to run concurrently with a general sentence of five years imposed on counts 1–19.

fraud. *United States v. Maze*, 414 U.S. 395, 400, 94 S.Ct. 645, 38 L.Ed.2d 603 (1974); *United States v. Cooper*, 596 F.2d 327, 329 (8th Cir. 1979). Because the mail fraud statute is written to apply to any scheme to defraud in which the mails are used, it is read expansively to effectuate that purpose. *United States v. Mirabile*, 503 F.2d 1065, 1066 (8th Cir. 1974), *cert. denied*, 420 U.S. 973, 95 S.Ct. 1395, 43 L.Ed.2d 653 (1975). Mailings are considered to be in execution of a fraudulent scheme if they are "sufficiently closely related," *United States v. Maze, supra*, 414 U.S. at 399, 94 S.Ct. 645, or "incident to an essential part of the scheme."[3] *Pereira v. United States*, 347 U.S. 1, 8, 74 S.Ct. 358, 362, 98 L.Ed. 435 (1954).

[3, 4] The evidence established that the mailings described in counts 1–14 were necessary to obtain federal funds. One element of the continuing kickback scheme was the repeated financing of the various projects Boyd controlled. Continued receipt of grant monies which Boyd could pay out to Manos as consulting fees was necessary to perpetuate and carry out this continuous scheme. Conduct is within the mail fraud statute when, as in this case, the use of the mails for the purpose of executing the flow of payoff funds is a reasonably foreseeable possibility in furthering the transaction, especially when the scheme continues and repeats over an extended period of time. *See United States v. Rabbitt*, 583 F.2d 1014, 1023 (8th Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979); *United States v. Brown*, 540 F.2d 364, 376 (8th Cir. 1976); *United States v. Minkin*, 504 F.2d 350, 353 (8th Cir. 1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1122, 43 L.Ed.2d 396 (1975). Under these circumstances, the jury was entitled to find that Boyd's use of the mails to gain access to grant monies was sufficiently closely related to the continuous execution of the kickback scheme to bring his conduct within the ambit of the mail fraud statute.

Counts 15–18 described Manos' mailings to the IRS of income tax payments comprised in part of monies obtained from Boyd's organizations. The mail fraud statute may not be invoked where, as here, the mailings are "legally compelled," *Parr v. United States*, 363 U.S. 370, 391, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960), and take place after the object of the scheme has been accomplished. *United States v. Maze, supra*, 414 U.S. at 402, 94 S.Ct. 645. We therefore reverse Boyd's convictions on counts 15–18 for mail fraud.

Boyd contends that the district court erred in permitting witness James Manos to testify while referring to a report summarizing his previous statements to the FBI. We disagree.

"The propriety of permitting a witness to refresh his memory from a writing prepared by another largely lies within the sound discretion of the trial court." *United States v. Conley*, 503 F.2d 520, 522 (8th Cir. 1974). Manos briefly referred to the report at defense counsel's request that he review specific check transactions shown in the report during cross-examination. He assured the court of his need to refer to the report to "put together [his specific] statements on the various checks" that had been written in furtherance of the three-year kickback scheme. We hold that the district court did not abuse its discretion in permitting Manos to refresh his memory from the report while testifying. *See* Fed.R.Evid. 612.

We also reject Boyd's claim that two exhibits should have been limited for jury consideration because foundation was not laid for every purpose for which they were used. The exhibits summarized records of the kickbacks kept by Manos for tax purposes. They were properly admitted as business records under Fed.R.Evid. 803(6) and were relevant to establish the working

---

**3.** Establishing the mailing element of the offense requires proof that (1) the accused used or caused the use of the mails, and (2) the use was for the purpose of executing the deceptive scheme. *United States v. Brown*, 540 F.2d 364, 375–76 (8th Cir. 1976). We need not address the issue of causation, as it is uncontested that Boyd "caused" the mailings described in counts 1–14.

relationship between Boyd and Manos. *See, e. g., United States v. Gilbertson,* 588 F.2d 584, 590 (8th Cir. 1978).

When, as in this case, evidence is properly admitted for one purpose, it is not rendered inadmissible or prejudicial simply because it does not satisfy the rules applicable to it in some other capacity. *United States v. Barash,* 365 F.2d 395, 400 (2d Cir. 1966), *after remand,* 412 F.2d 26 (2d Cir.), *cert. denied,* 396 U.S. 832, 90 S.Ct. 86, 24 L.Ed.2d 82 (1969). It was within the district court's discretion to admit this evidence, *United States v. Wyant,* 576 F.2d 1312, 1316 (8th Cir. 1978), and to refuse to limit the use of such evidence where the court determined that its probative value was not outweighed by any danger of unfair prejudice. Fed.R.Evid. 403. We find no abuse of that discretion in this respect.

Finally, Boyd challenges his five-year sentence on count 20 as excessive.[4] A general sentence of five years was imposed on counts 1–19 to run concurrently with a five-year sentence on count 20.[5] It is not possible for this court to accurately determine whether the sentences imposed on counts 1–14, 19 and 20, which remain valid, were in part induced by the convictions on counts 15–18 which we now hold to be invalid. *James v. United States,* 476 F.2d 936, 937 (8th Cir. 1973).

Accordingly, we reverse the judgment of conviction on counts 15–18, affirm the convictions on counts 1–14, 19 and 20, and remand for resentencing.

4. The kickback schemes alleged in counts 1–19 involved the misuse of between $65,000 and $100,000 of federal funds. Count 20 alleged that Boyd conspired with William Beatty to use $600 of federal funds for personal use. Although the sentence imposed for count 20 was within statutory limits, the vast difference in the amount of funds allegedly misused suggests that counts 1–19 may have influenced the sentence imposed on count 20.

5. We decline to apply the concurrent sentence rule as a matter of judicial discretion. *See Benton v. Maryland,* 395 U.S. 784, 791, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *United States v. Holder,* 560 F.2d 953, 955 (8th Cir. 1977); *Sanders v. United States,* 541 F.2d 190, 193 (8th Cir. 1976), *cert. denied,* 429 U.S. 1066, 97 S.Ct. 796, 50 L.Ed.2d 784 (1977).