_____

No. 95-3310
_____

United States of America,        *
                                 *
            Appellee,            *
                                 *
    v.                           * Appeal from the Untied States
                                 * District Court for the
Lavaughan Maddix, also known     * Western District of Missouri
as LaVaughn Maddix,              *
                                 *
            Appellant.           *

_____

        Submitted:  March 14, 1996

            Filed:  September 18, 1996
_____

Before McMILLIAN, BEAM and HANSEN, Circuit Judges.
_____

McMILLIAN, Circuit Judge.

        Lavaughan Maddix appeals from a final judgment entered in the
District Court[1] for the Western District of Missouri, upon a jury verdict,
finding him guilty of being a felon in possession of a firearm in violation
of 18 U.S.C. §§ 922(g)(1), 924(e)(1).  The district court sentenced Maddix
to 327 months imprisonment, 5 years supervised release and a special
assessment of $50.00.  For reversal, Maddix argues the district court erred
in (1) finding that he was an armed career criminal for purposes of
sentence enhancement, (2) finding that he possessed the firearm in
connection with a crime of violence, (3) admitting evidence of other
crimes, (4) admitting hearsay evidence, and (5) denying his

_____

[1]The Honorable Elmo B. Hunter, United States District Judge
for the Western District of Missouri.

motion for judgment of acquittal.  For the reasons discussed below, we affirm the judgment of the district court.

BACKGROUND FACTS

On March 11, 1994, police were dispatched to an apartment in Kansas City, Missouri.  Maddix opened the door.  Lisa Tillman was standing behind Maddix, holding her right hand, which was bleeding, wrapped in a blood-soaked cloth.  Maddix told the police that Tillman had cut her hand on the glass-topped coffee table.  The police examined the coffee table top but found no nicks or chips.  The police frisked Maddix and found a Clerke Technicorp revolver and a utility knife in his pants pocket.  Maddix told the police that the revolver was not loaded.

There was conflicting testimony about what had happened before the police arrived.  Maddix testified that Tillman approached him earlier that evening and asked him if he wanted to smoke some crack.  He agreed.  He and Tillman later argued about buying more crack and he thought she was about to threaten him with something in her purse.  He testified that he cut her hand to prevent her from reaching her purse and that he later found the revolver in her purse.

However, according to Tillman, who testified as a government rebuttal witness, Maddix had approached her and a friend and that the three of them smoked crack in Maddix's apartment.  Defendant then offered to buy more crack in exchange for sex.  When Tillman refused the proposition, Maddix threatened to shoot her and went to a closet and got something out of a shoe box.  Tillman again refused the proposition.  Maddix cut her hand with the utility knife and took $40 out of her purse.  Tillman's screams evidently caused someone to call the police.

A police firearms expert testified that the revolver functioned as designed and was operable. A Bureau of Alcohol, Tobacco and Firearms (ATF) special agent testified that the statutory definition of firearm includes a starter pistol and that, based on his review of tracing reports kept in the ordinary course of business by the ATF and his experience with the manufacturing of firearms, that the revolver seized from Maddix in Missouri was manufactured in Santa Monica, California, and therefore had been transported in interstate commerce.

Maddix was charged with unlawful firearms possession in violation of 18 U.S.C. §§ 922(g), 924(e)(1). The government introduced into evidence at trial certified copies of Maddix's prior felony convictions for manslaughter in 1973 and 1975, armed criminal action in 1982, and arson in 1990. Maddix testified in his own defense that he had seized the revolver from Tillman in order to prevent her from using it against him and that the revolver could only be operated by using a pair of pliers. On cross-examination, the government asked Maddix about whether he had propositioned Tillman, smoked crack, attempted to physically force her to have sex with him, threatened to shoot her, and cut her hand with a utility knife. The jury found Maddix guilty. At sentencing the government introduced into evidence the certified copies of the prior felony convictions and the information for each conviction. The district court found Maddix was an armed career criminal and that he had committed the firearms offense in connection with a crime of violence and sentenced him to 327 months imprisonment, 5 years supervised release and a special assessment of $50. This appeal followed.

ARMED CAREER CRIMINAL

Maddix first argues the district court erred in finding that he was an armed career criminal for purposes of sentence enhancement under 18 U.S.C. § 924(e)(1). Under U.S.S.G.

§ 4B1.4(a), a defendant who is subject to an enhanced sentence under 18 U.S.C. § 924(e) is an armed career criminal. Title 18 U.S.C. § 924(e)(1) requires three previous convictions for a violent felony or serious drug offense committed on occasions different from one another. Section 924(e)(2)(B) defines the term "violent felony" as

> any crime punishable by imprisonment for a term exceeding one year . . . that--
>
> > (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

See also U.S.S.G. § 4B1.2(1) (defining "crime of violence" using language similar but not the same as "violent felony" in 18 U.S.C. § 924(e)(2)(B)) & application note 2 ("crime of violence" includes murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery, arson, extortion, extortionate extension of credit, and burglary of a dwelling). Maddix concedes that the government proved that he has four prior felony convictions but argues the government failed to prove that the convictions involved violent felonies.

In determining whether a prior conviction is either a violent felony or serious drug offense for purposes of sentence enhancement under 18 U.S.C. § 924(e), the sentencing court is not restricted to looking solely at the fact of conviction and the statutory definition of the offense but may also consider the charging paper and jury instructions. Taylor v. United States, 495 U.S. 575, 602 (1990). We have already held that manslaughter is a "violent felony" for purposes of sentence enhancement under 18 U.S.C. § 924(e)(2)(B)(i). United States v. Leeper, 964 F.2d 751, 753 (8th

-4-

Cir. 1992). "Arson" is specifically mentioned in 18 U.S.C. § 924(e)(2)(B)(ii). In addition, Missouri law defines "arson in the second degree," which is the offense of which Maddix was convicted, as knowingly damaging a building or inhabitable structure by starting a fire or causing an explosion. Mo. Rev. Stat. § 569.050 (1994). According to the information, Maddix started a fire at a house at a time when a person was then present, thereby recklessly placing that person in danger of death or physical injury. Whether we focus on the elements of the crime of arson in the second degree or the crime's underlying facts as set forth in the information, arson in the second degree involves "conduct that presents a serious potential risk of physical injury to another" and thus qualifies as a "violent felony" for purposes of sentence enhancement under 18 U.S.C. § 923(e)(2)(B)(ii). Maddix has the requisite three prior violent felony convictions necessary to trigger sentence enhancement under 18 U.S.C. § 924(e).[2]

CRIME OF VIOLENCE

Maddix next argues the district court erred in finding that Maddix had possessed the firearm in connection with a crime of violence under U.S.S.G. § 4B1.4(b)(3)(A). Maddix argues that unlawful possession of a firearm is not itself a crime of violence. However, the requisite crime of violence is not the unlawful possession of a firearm but instead the associated criminal conduct, that is, the crime of violence committed in connection

_____

[2]Because Maddix has two manslaughter convictions and one arson conviction, we do not need to decide whether armed criminal action is a violent felony for purposes of sentence enhancement under 18 U.S.C. § 924(e). We note, however, that both the elements of the offense of armed criminal action, Mo. Rev. Stat. § 571.015, and the underlying facts (robbery committed with a deadly weapon) supported the district court's finding that armed criminal action is a violent felony as defined by 18 U.S.C. § 924(e)(2)(B)(i) (crime involving either use, attempted use or threatened use of physical force against the person of another), (ii) (crime involving conduct that presents a serious risk of physical injury to another).

-5-

with the unlawful possession of a firearm.  Here, two crimes of violence were committed in connection with the unlawful possession of a firearm. The district court found that Maddix had possessed the firearm while robbing Tillman and cutting her hand with the utility knife, conduct which involved "the use, attempted use, or threatened use of physical force against the person of another" within the meaning of U.S.S.G. § 4B1.2(1)(i) (defining "crime of violence" as "any offense under federal or state law punishable by imprisonment for a term exceeding one year that . . . has as an element the use, attempted use, or threatened use of physical force against the person of another").  Cf. United States v. Leeper, 964 F.2d at 754 (defendant committed "crime of violence" by being felon in possession of firearm when he fired shots into occupied residence).

EVIDENCE OF OTHER CRIMES

Maddix next argues the district court abused its discretion in admitting evidence of other crimes, that is, evidence that he had solicited a prostitute, smoked crack, and physically threatened and assaulted Tillman with a utility knife.  This evidence of other crimes came out during his cross-examination and in Tillman's testimony.  Maddix argues this evidence was not admissible as other crimes evidence under Fed. R. Evid. 404(b), was irrelevant to the offense charged, and was unfairly prejudicial.

This evidence was not admitted as other crimes evidence under Fed. R. Evid. 404(b).  Maddix was properly cross-examined about what had happened before the police arrived because he had testified about his version of the events on direct examination.  Fed. R. Evid. 611(b); United States v. Escobar, 50 F.3d 1414, 1423 (8th Cir. 1995).  The questions on cross-examination did refer to Maddix's conduct in terms of specific crimes, but Maddix had already testified about what had happened. Referring to Maddix's conduct as specific crimes may have been prejudicial but it was not

unfairly prejudicial.  Tillman's testimony was admitted to rebut Maddix's testimony about what had happened and impeach his credibility.  Her testimony about what had happened also explained the underlying circumstances.  Even if we consider Tillman's testimony about Maddix's conduct as evidence of other crimes, it was admissible as "an integral part of the immediate context of the crime charged," and thus not extrinsic evidence governed by Fed. R. Evid. 404(b).  United States v. Bass, 794 F.2d 1305, 1312 (8th Cir.), cert. denied, 479 U.S. 869 (1986).

HEARSAY EVIDENCE

Maddix next argues the district court abused its discretion in admitting hearsay evidence about the interstate transportation of the revolver.  An ATF special agent testified that the revolver had been manufactured in California, then shipped to dealers in Arkansas, and then eventually sold in Missouri.  Maddix argues the evidence of interstate transportation was hearsay because the special agent did not have personal information about the interstate shipments and had obtained that information from a tracing report.  We disagree.  The special agent testified as a firearms expert and used the tracing report, which was not itself admitted into evidence, to refresh his recollection.  "The propriety of permitting a witness to refresh his [or her] memory from a writing prepared by another largely lies within the sound discretion of the trial court."  United States v. Boyd, 606 F.2d 792, 794 (8th Cir. 1979); cf. United States v. Darden, 70 F.3d 1507, 1540 (8th Cir. 1995) (informant refreshed recollection by reviewing reports prepared by government agents from informant's notes), cert. denied, 116 S. Ct. 1449, 2567 (1996).  In addition, the special agent testified that firearms experts customarily rely upon tracing reports to determine whether firearms have been transported across state lines.  Fed. R. Evid. 703 (facts or data need not be admissible in evidence if of a type reasonably relied upon by experts in the particular field in forming opinions or

inferences upon the subject).  In any event, the special agent testified that, in his opinion, the revolver had been transported in interstate commerce (at least from California to Missouri, if not the intermediate shipment through Arkansas).  His opinion was also based upon evidence other than the tracing report, that is, the identity of the manufacturer (Clerke Technicorp) and the place of manufacture (Santa Monica, California), both of which were stamped on the revolver (the revolver had been admitted into evidence as exhibit #A-1), and the fact that the revolver had been seized in Missouri.

SUFFICIENCY OF THE EVIDENCE

Maddix next argues the district court erred in denying his motion for judgment of acquittal because the revolver was not operable.  He argues the revolver could not be loaded without using certain tools (a pair of pliers) and that there was no evidence that he had any such tools.  Title 18 U.S.C. § 921(a)(3) does not require a firearm to be operable.  The statute defines a "firearm" as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  Id. § 921(a)(3)(A).  In the present case the police firearms expert testified that the revolver was operable and functioned as designed.  The ATF special agent had examined the revolver and testified that it was a firearm within the meaning of the statute whether or not certain tools were required to load it.

Accordingly, we affirm the judgment of the district court.

BEAM, Circuit Judge, concurring.

I concur in the result reached by the court and in all of the opinion except the portion captioned "Hearsay Evidence."

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.