# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 97-3560

_____

United States of America,                    *
                                             *
                  Appellee,                  *
                                             *
      v.                                     *
                                             *
Clarence S. Brooks, also known as            *
Puppy Dog,                                   *
                                             *
                  Appellant.                 *

_____                    Appeals from the United States
                                   District Court for the Western
No. 97-3652                        District of Missouri.

_____

United States of America,                    *
                                             *
                  Appellee,                  *
                                             *
      v.                                     *
                                             *
Willie J. Barrett, Jr., also known as        *
Willie Hayes, also known as Will Will,       *
                                             *
                  Appellant.                 *

No. 97-3713
_____

United States of America,     *
                              *
        Appellee,     *
                              *
    v.                          *
                              *
Terry T. Barrett, also known as Tet Tet, *
                              *
        Appellant.     *

_____

Submitted:  September 21, 1998
Filed: April 15, 1999

_____

Before McMILLIAN, HEANEY, and FAGG, Circuit Judges.

_____

FAGG, Circuit Judge.

For nearly eight years, members of the Barrett family and individuals unrelated to the Barretts participated in a large-scale drug operation in Kansas City, Missouri. Law enforcement investigation of the Barrett family and their associates culminated in the indictment of twelve coconspirators, and all but Clarence S. Brooks, Willie J. Barrett, Jr., and Terry T. Barrett pleaded guilty before trial.  A jury convicted these three remaining defendants (collectively referred to as the appellants) of conspiracy to distribute marijuana, cocaine, crack cocaine, and phencyclidine in violation of 21 U.S.C. § 846 (1994).  They appeal and we affirm.

Initially, Brooks and Terry T. Barrett contend the district court abused its discretion in granting the Government's for-cause challenges to prospective jurors Williams and Clinton, who favored the decriminalization of marijuana. We need not discuss this issue, however, because Brooks's and Barrett's contention is foreclosed by this court's contrary holdings. Even if the district court abused its discretion in striking Williams and Clinton for cause, Brooks and Barrett would not be entitled to a reversal of their convictions because they failed to show the jurors who tried their case were biased against them. See United States v. Horsman, 114 F.3d 822, 825 (8th Cir. 1997), cert. denied, 118 S. Ct. 702 (1998); United States v. Cruz, 993 F.2d 164, 168-69 (8th Cir. 1993); see also United States v. Padilla-Mendoza, 157 F.3d 730, 733-34 (9th Cir. 1998), cert. denied, 119 S. Ct. 1084 (1999). Indeed, Brooks and Barrett concede in their briefing on appeal that they "cannot claim that the [prospective jurors] remaining after the erroneous strikes w[ere] not impartial." In sum, Brooks and Barrett failed to meet their burden of establishing that the dismissal of Williams and Clinton resulted in a prejudicial jury panel. See Horsman, 114 F.3d at 825; Cruz, 993 F.2d at 168-69.

We also decline to consider Brooks's and Terry T. Barrett's sparsely worded single-sentence declaration that they are "defend[ing]" Williams's and Clinton's right "to participate in the jury trial process." Brooks and Barrett did not include this contention in their stated opposition to the Government's motion to strike these jurors for cause or otherwise raise this point in the district court. Additionally, in their briefs to this court, Brooks and Barrett failed to list their gratuitous assertion as an issue on appeal or present any argument on the point. In these nebulous circumstances, Brooks and Barrett failed to preserve this contention for our review. See United States v. Elliott, 89 F.3d 1360, 1367 (8th Cir. 1996) (failure to raise argument before district court waives argument on appeal); Fed. R. App. P. 28(a)(5), (a)(9) (requiring statement of issues presented for appeal and discussion of contentions in appellate brief); United States v. Gonzales, 90 F.3d 1363, 1369-70 (8th

Cir 1996) (failure to assign error or discuss contention in appellate brief is deemed abandonment of issue).

Next, Willie J. Barrett, Jr. contends the district court improperly denied his peremptory challenge to prospective juror Lisa Cherry, an African American single mother raising an infant child in Kansas City, after Brooks and Terry T. Barrett raised a Batson objection to the peremptory challenge. See Batson v. Kentucky, 476 U.S. 79 (1986). Having reviewed the record, we conclude Willie J. Barrett's explanation for striking Cherry does not pass muster under our case law because Barrett did not challenge other similarly situated members of the jury who were not African Americans. It is well established in this circuit "that [a litigant] may not justify peremptory challenges to venire members of one race unless venire members of another race with comparable or similar characteristics are also challenged." Davidson v. Harris, 30 F.3d 963, 965 (8th Cir. 1994) (alteration in original) (citations omitted). Thus, the district court's ruling rejecting Barrett's racially discriminatory use of a peremptory challenge was not clearly erroneous.

The appellants also raise a number of other issues related to the trial that can be summarized as follows: there was a variance between the indictment and the Government's proof; the district court abused its discretion in denying motions for severance; the district court failed to suppress wire-tap interceptions, improperly ruled on a variety of evidentiary matters, and misinstructed the jury; and the prosecutor engaged in misconduct during closing argument. After considering these issues with care, we conclude the district court correctly resolved each of the appellants' claims and a detailed discussion will have little, if any, precedential value. Also, the appellants' contention that the admission of coconspirator testimony given in exchange for the Government's promises of leniency violated the federal anti-gratuity statute is foreclosed by our recent opinions in United States v. Johnson, No. 98-2671, 1999 WL 55234, at *5 (8th Cir. Feb. 8, 1999), and United States v. Boyd, No. 98-3214, 1999 WL 80305, at *1 (8th Cir. Feb. 18, 1999) (per curiam). See also

-4-

United States v. Singleton, 165 F.3d 1297 (10th Cir. 1999) (en banc).  Finally, we reject Brooks's challenge to his sentence because the record shows the district court's sentence-related findings are not clearly erroneous and the district court correctly determined Brooks's sentence.

We affirm the appellants' convictions and Brooks's sentence.

HEANEY, Circuit Judge, dissenting:

The district court and a majority of this panel believe that, as a matter of law, a person who favors the legalization of marijuana is incapable of finding a criminal defendant guilty of a drug crime.  I disagree and respectfully dissent.

The trial judge at the outset of voir dire proceedings inquired whether prospective jurors believed that they were unable to "give each side a fair and impartial consideration of the evidence."  (Tr. at 36.)  The judge also asked if any prospective juror would "be governed by sympathy, prejudice, or public opinion."  (Tr. at 38.)  In response to these general questions only one venireperson expressed doubt as to his impartiality.[1]  The court then made a series of specific inquiries, including whether prospective jurors believed in the legalization of drugs generally or of the specific drugs at issue in the case, including marijuana.  Venirepersons Williams and Clinton each stated their belief that marijuana should be decriminalized.[2]  Though the court as a general practice asked individual

---

[1]Venireperson Proctor indicated that he had a bias based on work with the African-American community.

[2]Subsequently, in response to a question concerning whether any venireperson had a close friend or relative who had been affected by the sale or use of illegal drugs, Venireperson Thweat also stated that she supported the decriminalization of marijuana.

venirepersons who responded to specific inquiries whether they would be able to maintain impartiality and fairness, the court failed to make such inquiry with respect to Williams and Clinton.

After individual venirepersons were asked to relate personal information, including experiences as a juror or a victim of crime, and were questioned by the attorneys, the court asked if there were any remaining issues that might bear upon impartiality and fairness. While several venirepersons informed the court of planned vacations, no new substantive issues were raised. The government then moved to strike Williams for cause, arguing that he would "be asked to find somebody guilty of a conspiracy concerning a drug that he feels should be legalized and for that reason . . . can[not] be a fair and impartial juror." Defense counsel objected that "[t]here was no inquiry as to whether or not he would be able to set aside his beliefs in that regard and . . . weigh the evidence under the law . . . and render a proper verdict under the law." (Tr. at 213.) The defense further noted that "an awful lot of people . . . dissent from the laws that some hold dear and . . . still enforce the laws in a correct fashion." (Tr. at 213.) The court granted the motion to strike without comment.[3]

Trial judges conducting voir dire must reach conclusions as to impartiality and credibility by relying on their own immediate perceptions and evaluations of demeanor. See Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality opinion). Accordingly, trial judges are entitled to "substantial discretion" in conducting voir dire. United States v. Cassel, 668 F.2d 969, 971 (8th Cir. 1982).

---

[3]The court also struck Venirepersons Clinton and Thweatt. Clinton, however, indicated that members of his family would be arriving for a vacation, and Thweat, in addition to stating her views on marijuana, indicated that she may be sympathetic to the defendants because a close friend of hers sold and used some of the drugs involved in this case. Because these are independently valid reasons for excusing a juror for cause, the district court did not abuse its discretion in dismissing Venirepersons Clinton and Thweatt.

"[D]eterminations of juror bias cannot be reduced to question-and-answer sessions which obtain results in the manner of a catechism." Wainwright v. Witt, 469 U.S. 412, 424 (1985). Thus, while trial judges are entitled to "substantial discretion" in conducting voir dire, they must exercise their discretion "consistent with 'the essential demands of fairness.'" Cassel, 668 F.2d at 971 (citations omitted).

Nothing in the record supports Williams' exclusion for actual bias. Williams merely stated his belief that marijuana should be decriminalized. The court failed to ask Williams specifically whether he could remain fair and impartial and render a proper verdict under the law. In addition, when the court inquired generally regarding partiality and fairness, Williams did not respond. The court repeatedly admonished that it understood silence in response to its questions to mean that no potential juror doubted their ability to render impartial judgment.

Since no actual bias existed, Williams' exclusion was proper only if his opinion regarding the decriminalization of marijuana supported an inference or presumption of bias as a matter of law. Because such a conclusion is a legal determination based on an objective evaluation of the impact of Williams' belief on the case at hand, the district court's exclusion of Williams is subject to de novo review. See Gonzales v. Thomas, 99 F.3d 978, 986 (10th Cir. 1996); see also United States v. Salamone, 800 F.2d 1216, 1226 (3d Cir. 1986) ("The usual factors cautioning restraint in appellate review, i.e., credibility and demeanor evidence, however, are simply absent from this record.")

Williams' opinion on the legalization of marijuana is insufficient to raise a presumption of bias. The implied bias doctrine is employed only in "'extreme' or 'exceptional' cases." United States v. Frost, 125 F.3d 346, 379 (6th Cir. 1997) (citations omitted), cert. denied, Frost v. United States, 119 S. Ct. 40 (1998). I believe the court was required to inquire further in order to establish the factual predicate for Williams' exclusion. Cf. United States v. Calabrese, 942 F.2d 218, 223-

24 (3d Cir. 1991) (without explanation or further <u>voir dire</u>, mere fact of potential jurors' acquaintance with defendant insufficient to render them incompetent to serve).

The Third Circuit, in <u>United States v. Salamone</u>, granted a new trial to a defendant convicted of firearms violations by a jury from which the district court excluded several potential jurors solely on the basis of their affiliations with the National Rifle Association. As in this case, "no inquiries whatsoever were directed to the excluded jurors to determine the nature and extent of their commitment to any principles that might have impaired their ability to serve impartially." <u>Id.</u> at 1226. The Third Circuit found "potentially dangerous" the exclusion of jurors based solely on the perceptions of trial judges and prosecutors as to jurors' external associations. <u>See</u> <u>id.</u> at 1225. I find <u>Salamone</u> persuasive. It is difficult for me to distinguish between the excluded jurors in <u>Salamone</u>, who affiliated themselves with an organization that vehemently opposes federal gun policy, and Williams, who in response to the district court's inquiry expressed his individual opposition to federal drug policy.

Although only Williams was excluded solely because of his opinion regarding the legalization of marijuana, I believe the district court's approach bespeaks a "systematic exclusion" requiring automatic reversal. <u>See</u> <u>id.</u> at 1227-28. Such an error is, by its very nature, not amenable to harmless-error analysis. Because no one can know how an excluded juror might have voted or otherwise have affected the verdict, it is impossible for a defendant to adduce proof of what might have happened had the juror been impaneled, and he is thus effectively deprived of a remedy. <u>See</u> <u>id.</u> at 1227-28. Moreover, because each improper exclusion for cause effectively bestows an extra peremptory challenge upon the party who requested the improper exclusion, the only remedy is a new trial for Brooks and Terry Barrett.[4]

---

[4]Willie Barrett does not raise this issue on appeal.

The majority asserts that we need not reach the question of whether the district court abused its discretion in systematically striking jurors who believed that the sale of marijuana should be legalized. I do not agree with this view and do not believe that the Horsman and Cruz cases control this decision. Those cases both rely on Ross v. Oklahoma, 487 U.S. 81, 86 (1988), in which the Supreme Court ruled that where a trial court improperly required the defendant to use a peremptory challenge to strike a juror who should have been stricken for cause, the defendant can make out a showing of prejudicial error only by showing that the empaneled jury was biased. However, the Salamone case makes it clear that this rule does not apply to the wholesale, arbitrary, and irrational exclusion of venirepersons based upon beliefs that have no relevance to their impartiality. See 800 F.2d at 1227-28. Nor should it. In Horsman and Cruz, the defendant was required to use a peremptory challenge to strike biased jurors. By contrast, the factual situation in both Salamone and the instant case is one in which the State was afforded additional peremptory challenges because it was mistakenly permitted to strike a juror for cause, thus denying a seat to impartial jurors. Such a situation cannot be harmless error.

I find additional support for this position in the Supreme Court case law dealing with the exclusion from capital cases of jurors whose moral or religious convictions may interfere with a state's administration of constitutional capital sentencing schemes. See, e.g., Witherspoon v. Illinois, 391 U.S. 510, 514 n.7 (1968) ("[E]ven a juror who believes that capital punishment should never be inflicted and who is irrevocably committed to its abolition could nonetheless subordinate his personal views to what he perceived to be his duty to abide by his oath as a juror and to obey the law of the State.") In Wainwright v. Witt, the Court stated that while bias in such cases need not be established with "'unmistakable clarity,'" exclusion is proper only where "the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" 469 U.S. at 424 (footnote omitted). The Court explained that this rule was consistent with its earlier decisions in Maxwell v. Bishop, 398 U.S. 262 (1970), and Boulden v.

Holman, 394 U.S. 478 (1969), because those cases involved jurors who were dismissed because they had "'conscientious' objections to, or did not 'believe in,' the death penalty." 469 U.S. at 422 n.4. I read these cases to dictate that Williams' mere belief in the legalization of marijuana was insufficient to warrant his exclusion for cause.

Furthermore, I am concerned with the consequences of permitting the exclusion of prospective jurors solely on the basis of their opinions regarding the legalization of marijuana. Although my own view regarding the legalization of marijuana runs contrary to that of Williams, I find it difficult to believe that such distinguished Americans as William F. Buckley,[5] Chief Judge Richard Posner,[6] and Milton Friedman[7] would be unable to render a fair verdict based on the law and the evidence. Further, if they had the slightest reservation regarding their ability to do so, I find it impossible to believe that they would defile the rule of law and conceal that hesitation from a court so that they would be seated on a jury. There is absolutely nothing in the record that suggests Williams is not similarly committed to the rule of law. For the reasons stated above, I would reverse the district court and remand for a new trial as to Clarence Brooks and Terry Barrett.

A true copy.

---

[5]See William F. Buckley, The Pot War In England, National Review, Dec. 31, 1995, at 55.

[6]Tony Mauro, Legalize Marijuana, Prominent Jurist Says, USA Today, Sept. 14, 1995, at 2A ("'It is nonsense that we should be devoting so many law enforcement resources to marijuana,' [Seventh Circuit Chief Judge Richard] Posner said.").

[7]Milton Friedman, An Open Letter To Bill Bennett, Wall St. J., Sept. 7, 1989, at A16 ("Drugs are a tragedy for addicts. But criminalizing their use converts that tragedy into a disaster for society, for users and non-users alike.").

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.